UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY E. MARULLO,

                                        Plaintiff,

                v.

MICHAEL J. ASTRUE, Commissioner of
 Social Security,

                                        Defendant.
_____

**REPORT**
**and**
**RECOMMENDATION**

**08-CV-0818A**

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER
                    Attorneys for Plaintiff
                    AMANDA R. JORDAN, of Counsel
                    6000 North Bailey Avenue
                    Suite 1A
                    Amherst, New York 14226

                    WILLIAM J. HOCHUL, JR.
                    United States Attorney
                    Attorney for Defendant
                    KEVIN D. ROBINSON,
                    Assistant United States Attorney, of Counsel
                    Federal Centre
                    138 Delaware Avenue
                    Buffalo, New York 14202

## <u>JURISDICTION</u>

        This action was referred to the undersigned by Honorable Richard J. Arcara on

January 28, 2009.  The matter is presently before the court on motions for judgment on

the pleadings filed on April 27, 2009 by Defendant (Doc. No. 6), and September 14,

2009 by Plaintiff (Doc. No. 9).

## BACKGROUND

Plaintiff Mary E. Marullo ("Plaintiff"), seeks review of Defendant's decision

denying her Supplemental Security Income ("SSI") under Title XVI of the Social Security

Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant

determined Plaintiff has the severe impairments of tendonitis and poly-peripheral

neuropathy, but does not have an impairment or combination of impairments that meets

or medically equals one of the listed impairments under 20 C.F.R. Part 404, Subpart P,

Appendix 1 20 C.F.R. 416.920(d), 416.925 and 416.926. (R. 16)[1]. Defendant also

determined that although Plaintiff's limitations diminish her ability to perform a full range

of light work, Plaintiff had the residual functional capacity to perform the representative

occupations of bench assembler, packager, charge account clerk, and order clerk within

twelve months of the alleged onset date. (R. 22). Defendant further determined that

even if Plaintiff's medically determinable impairment could reasonably be expected to

produce the alleged symptoms, its alleged intensity, persistence and limiting effects

were not "entirely credible." (R. 19).  As such, Plaintiff was found not disabled, as

defined in the Act, at any time from the alleged onset date through the date of the

Administrative Law Judge's decision. *Id.*


## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on January 15, 2005, (R. 129);

that was initially denied by Defendant on March 21, 2005. (R. 24-26). Pursuant to

---

[1]"R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

Plaintiff's request, filed May 20, 2005 (R. 28-29), a hearing was held before Administrative Law Judge Timothy M. McGuan ("the ALJ") on December 12, 2007, in Buffalo, New York. (R. 318-25). The Plaintiff appeared and testified at the hearing without legal representation. The ALJ's decision denying the claim was rendered on January 16, 2008. (R. 85-93).

On March 12, 2008, Plaintiff requested review of the ALJ's decision by the Appeals Council (R. 106), which remanded the decision of the ALJ on March 26, 2008 for additional evidence and testimony of a vocational expert. (R. 102-3). A second hearing was held before the ALJ on May 12, 2008, in Buffalo, New York, at which Plaintiff, represented by Amanda R. Jordan, Esq., appeared. (R. 328-44). Testimony was also given by vocational expert Timothy P. Janikowski, PhD., ("Janikowski") ("the VE"). (R.337-42). The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on October 17, 2008. (R. 4-6). This action followed on November 7, 2008, with Plaintiff alleging the ALJ erred by failing to consider her disabled as of January 15, 2005. (Doc. No. 1).

Defendant's answer, filed January 26, 2009 (Doc. No. 3), was accompanied by the record of the administrative proceedings. On April 27, 2009, Defendant filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 7) ("Defendant's Memorandum"). Plaintiff filed a cross motion for judgment on the pleadings ("Plaintiff's motion") on September 14, 2009, accompanied by a supporting memorandum of law (Doc. No. 9) ("Plaintiff's Memorandum"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion should be DENIED; Defendant's motion

should be GRANTED. The Clerk of the Court should be directed to close the file.

## FACTS[2]

Plaintiff, was born on May 17, 1980, has a high school education, one year of college, and has previously worked briefly as a dishwasher and nursing home aide, but has no past relevant work experience relative to her disability claim benefits. (R. 140-41). At the date of the hearing on December 12, 2007, Plaintiff lived with her former boyfriend and his parents, and her two children ages five and two. (R. 324). Plaintiff alleges she has neuropathy in her legs that results in poor balance and falling, lower back pain, and leg pain while standing, squatting, and kneeling. (R. 331).

On October 19, 2004, Plaintiff sought treatment from Inter-Community Memorial Hospital, in Newfane, New York, for a lower leg laceration after tripping over a riding lawn mower while working. (R. 196). Plaintiff was treated with staple sutures, and prescribed Motrin for pain. (R. 197-203). A blood test ordered by Plaintiff's family physician, Harnath B. Clerk, M.D. ("Dr. Clerk"), on January 20, 2005, was negative for rheumatoid arthritis. (R. 310). Plaintiff visited Robert M. Bauer, M.D. ("Dr. Bauer"), on January 28, 2005, with discomfort in both knees while kneeling and squatting. (R. 206). Upon examination, Dr. Bauer evaluated Plaintiff with full range of motion in both upper and lower extremities, no knee instability, slight discomfort with patellar apprehension (pressure on the kneecap to determine instability), diagnosed Plaintiff with left and right knee tendonitis, and prescribed physical therapy and anti-inflammatory medication. *Id*.

---

[2]Taken from the pleadings and the administrative record.

An X-ray of Plaintiff's right knee performed the same day was normal. *Id*.

Dr. Clerk evaluated Plaintiff on February 8, 2005, with symptoms of joint pain, noting Plaintiff did not exhibit any gait abnormality or require the use of any assistive devices, and that he was not able to make a connection between Plaintiff's medical findings and her ability to do work-related activities. (R. 210-12). On February 25, 2005, John Schwab, D.O. ("Dr. Schwab") performed a consultative examination on Plaintiff who exhibited full flexion and extension of the cervical and lumbar spine, 30 degree internal hip rotation, 40 degree external hip rotation, and full range of motion of both knees. (R. 217-20). Dr. Schwab noted Plaintiff exhibited a "mild restriction to walking," used no assistive devices, and diagnosed Plaintiff with an abnormal gait and knee arthralgia (joint pain). *Id*.

At a residual functional capacity assessment performed by Disability Examiner C. Wahl ("DE Wahl") on March 19, 2005, Plaintiff exhibited an ability to sit for six hours, stand or walk for six hours, and occasionally lift fifty pounds. (R. 221). On a medical source statement completed March 21, 2005, Dr. Clerk reported Plaintiff exhibited joint pain and moderate limitations with walking, standing, lifting, carrying, pushing, pulling, and bending. (R. 226). Dr. Clerk opined Plaintiff was totally disabled and referred Plaintiff to physical therapy. (R. 227). During a follow-up examination with Dr. Bauer on March 25, 2005, Plaintiff exhibited "good" stability in her knees and hips, full range of motion in her knees, and stated physical therapy was "helping her." (R. 231).

On May 12, 2005, Plaintiff sought treatment at Inter-Community Hospital for a twisted ankle, where a diagnostic X-ray revealed a left bimalleolar (two sided) ankle

fracture. (R. 230). Plaintiff received an ankle cast and crutches. *Id*. On June 24, 2005,

Dr. Bauer removed Plaintiff's left ankle cast, opining an X-ray taken the same day

showed "excellent" healing. (R 228-29).

On February 27, 2007, Dr. Clerk reported in a medical source statement that he

could not offer an opinion as to Plaintiff's condition because the last time the Plaintiff

was seen in his office was on March 21, 2005. (R. 234).[3] On April 20, 2007, Plaintiff

underwent a neurological consultation by Malti Patel, M.D. ("Dr. Patel"), who noted

Plaintiff exhibited "restricted range of movement of both ankles in dorsiflexion [bending

of the ankle toward the shin], with mute ankle response bilaterally. . . sustained clonus

[involuntary muscle contraction] at both knees with hyperflexia [over-responsive reflex]

in both [her] upper and lower extremities with mute ankle responses." (R.

276)(bracketed material added).[4] Dr. Patel opined the new onset of Plaintiff's localized

lower back pain made the possibility of discogenic (pain originating from a damaged

vetebral disc) disease a "likely consideration." *Id*.

On May 9, 2007, Thomas Holmlund, M.D. ("Dr. Holmlund"), performed an

electromyogram ("EMG")(test to detect abnormal muscle activity) on Plaintiff 's lower

extremities that was "highly suggestive of a motor sensory peripheral polyneuropathy

[neurological disorder where many peripheral nerves malfunction simultaneously] with

features of axonal loss [loss of nerve fibers] and probably also demyelination [loss of

substance that insulates nerve endings]," opining Plaintiff's neuropathy was so severe

---

[3]The record does not clearly indicate the identity of the author of the March 21, 2005 medical source statement although Plaintiff visited Dr. Clerk that same day. (R. 270)

[4]Unless otherwise indicated all bracketed material has been added.

in degree electrodiagnostically that it was "impossible to discern whether demyleniation is also present." (R. 278)(bracketed material added). A May 9, 2007, magnetic resonance imaging ("MRI") test on Plaintiff's head performed by Ronald Alberico, M.D. ("Dr. Alberico") showed normal results. (R. 243).

A follow-up examination with Dr. Patel on June 1, 2007, showed Plaintiff exhibiting restricted range of motion in both ankles, sustained clonus (involuntary muscle contractions) in both knees, and mute responses at the ankles, leading Dr. Patel to diagnose motor sensory peripheral neuropathy. (R. 281).

A medical source statement by Dr. Clerk dated November 12, 2007, showed Plaintiff exhibiting the ability able to sit, stand, and walk for a maximum of one hour at a time without interruption, or a total of one hour for each eight hour work day. (R. 260). Dr. Clerk noted Plaintiff required "the use of a cane to ambulate," but that it was not medically necessary. *Id*.

On December 7, 2007, Plaintiff sought treatment for depression from Dr. Clerk, who prescribed Lexapro. (R. 299). A disability determination assessment performed by Dr. Clerk on August 12, 2008, showed Plaintiff exhibiting very limited physical functioning with walking, standing, lifting, carrying, and stair climbing, and moderate limitations with respect to sitting, ataxia (gross lack of coordination of muscle movements) and joint pain, moderately limited as to sitting, but not limited as to seeing, hearing, speaking, use of hands and mental functioning. (R. 316-17). Dr. Clerk opined Plaintiff was totally disabled. *Id*.

Plaintiff testified she experienced pain in her lower legs and back while walking,

sitting, and standing, and difficulty climbing stairs. (R. 334-35). The VE testified that

individuals the same age and education of Plaintiff, capable of sitting up to eight hours

each day, standing or walking two hours, lifting and carrying up to twenty pounds

occasionally, and ten pounds frequently, with the non-exertional limitations of no

climbing, kneeling, squatting, or crawling, would be capable of light work. (R. 338).


## DISCUSSION

**1.      Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less
> than 12 months. . ..  An individual shall be determined to be
> under a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant. *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.    Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Pollard v. Halter,* 377 F.3d 183, 188 (2d Cir. 2004) *citing Richardson*, 402 U.S. at 401 (*quoting Consol. v. NLRB*, 305 U.S. 197, 229 (1938)).

While evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Scherler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas v. Schweiker, supra*, at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v.*

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period of which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id*. The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[6] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

---

Commissioner of Social Security, effective March 31, 1995.

[6] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry, supra*, at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson v. Perales*, 402 U.S. 389, 410 (1971).

**B.**     **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. §

404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff did not engage in substantial gainful activity since January 15, 2005, the onset date of the alleged disability. (R. 15). Plaintiff does not contest this finding.

**C.**     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff has a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ found Plaintiff has the severe impairments of tendonitis of the knees bilaterally and poly-peripheral neuropathy of the lower extremities, but that Plaintiff's bimalleolar left ankle fracture, left leg laceration, lower back pain and bladder and bowel impairments were not severe. (R. 15). Plaintiff does not contest the finding Plaintiff has the severe impairments of tendonitis and poly-peripheral neuropathy. [7]

---

[7] The record is not clear if Plaintiff is alleging her bladder disorder will continue for the twelve month duration required under the Act.

**D.**     **Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The relevant listing of impairment in this case includes 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.02 (major dysfunction of a joint(s) due to any cause)("§ 1.02") characterized by

> gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: (A) involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b).

Under § 1.00(B)(2)(b), the inability to ambulate effectively is defined as an extreme limitation of the ability to walk; *i.e.* an impairment(s) that interferes with the individual's ability to independently initiate, sustain, or complete activities, including having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

In this case, the ALJ, as required, evaluated Plaintiff's impairment under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, directed to consideration of the Listing

of Impairments, determining the impairment was not accompanied by the required clinical signs and diagnostic findings under the Act. (R. 17). The ALJ concluded the record did not establish substantial evidence Plaintiff suffered a "major dysfunction of a joint with involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively or involvement of one major peripheral joint in each upper extremity resulting in [in]ability [sic] to perform fine and gross movements effectively as required by section 1.02." (R. 17)(bracketed material added). The record supports this conclusion.

Specifically, on January 28, 2005, Dr. Bauer evaluated Plaintiff and reported Plaintiff exhibited full range of motion of the upper extremities and lower extremities, intact left and right upper and lower extremities, no knee instability, and slight discomfort with patellar apprehension (movement of the kneecap). (R. 232). Plaintiff exhibited slight crepitation (grating) of her right and left patella. *Id*. On February 25, 2005, Dr. Schwab performed a consultative medical examination on Plaintiff, noting Plaintiff exhibited a "mild" restriction to walking and an "abnormal" gait, was unable to walk on her heels, able to get on and off the exam table without assistance, rise from a chair without difficulty, and did not use a crutch or cane. (R. 217-20). Dr. Schwab noted Plaintiff cooked three times each week, cleaned house four times each week, did laundry three times each week, took care of her two year old child, dressed herself each day, and enjoyed going out to shop. *Id*. A residual functional capacity assessment performed by DE Wahl on March 19, 2005, showed Plaintiff able to cook, clean, do laundry, shop, and take care of her child. (R. 220-25).

Although on March 21, 2005, Dr. Clerk noted Plaintiff exhibited moderate

limitations for walking, standing, lifting, carrying, pushing, pulling, and bending, and no

limitations for sitting, climbing stairs, or using her hands, and classified Plaintiff as

totally disabled, (R. 227), a follow-up examination with Dr. Bauer on March 25, 2005,

showed Plaintiff exhibited "good" stability in her knees and hips, full range of motion of

her knees, no laxity or swelling of the knees, and "slight" discomfort during palpation of

the left and right knee. (R. 231). On June 24, 2005, Plaintiff returned to Dr. Bauer, who,

after removing Plaintiff's ankle cast, opined Plaintiff's X-ray showed "excellent" healing

of the left ankle fracture sustained on May 12, 2005. (R. 228).

A medical examination for employability assessment in April 2007,[8] showed

Plaintiff was very limited with respect to walking, standing, lifting, carrying, and climbing

stairs. (R. 241). A neurological consultation by Dr. Patel on April 20, 2007, showed

Plaintiff exhibited

> restricted range of movement of both ankles and dorsiflexion, with mute ankle
> response bilaterally. . . [s]ustained clonus at both knees, with hyperreflexia in
> both upper and lower extremities with mute ankle response. Her gait is
> somewhat waddling in nature. . .  [unchanged per patient].

(R. 277)(bracketed material added).

Dr. Patel opined Plaintiff did not exhibit evidence of radiculopathy, and recommended

an MRI and EMG of Plaintiff's lower extremities to rule out any "acute process." *Id*. The

EMG, performed by Dr. Holmlund on May 9, 2007, was "highly suggestive of a motor

sensory peripheral polyneuropathy with features of chronic axonal loss and probably

also demyelination." (R. 278). Dr. Holmlund opined Plaintiff's neuropathy was so severe

in degree electrodiagnostically that it was "impossible to discern whether demyeliniation

---

[8]Authorization in record does not contain a legible signature or date.

is also present." *Id*. A head MRI performed by Dr. Alberico on May 10, 2007, was normal. (R. 243). Dr. Patel confirmed Dr. Holmlund's diagnosis of motor sensory peripheral neuropathy during a follow-up examination of Plaintiff on June 1, 2007. (R. 281).

A medical source statement completed by Dr. Clerk[9] showed Plaintiff able to climb stairs, stoop, kneel, crouch, and crawl occasionally, perform activities like shopping, travel without a companion for assistance, ambulate without using a wheelchair, walker, two canes or two crutches, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few stairs at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself, care for her personal hygiene, sort, handle, and use paper files. (R. 264). A second medical assessment by Dr. Clerk on November 12, 2007, showed Plaintiff able to sit, stand, and walk for a maximum of one hour, shop, travel without a companion, use public transportation, climb steps at a reasonable pace, walk uneven and rough surfaces at a reasonable pace, and ambulate without assistive devices. (R. 264). Dr. Clerk noted Plaintiff used a cane to ambulate, but that the cane was not "medically necessary." *Id*. Dr. Clerk's medical assessment of Plaintiff on August 8, 2008, showed Plaintiff was very limited in her ability to walk, stand, lift, carry, and climb stairs, (R. 318), leading Dr. Clerk to classify Plaintiff as totally disabled. (R. 317).

Although treating physician opinions are afforded more weight when supported by medical evidence in the record, 20 C.F.R. § 404.1527(c)(4), in this case, the treating

---

[9] The date of the medical assessment is not legible in the record. The Office of Hearing and Appeals received the assessment on November 6, 2007.

physician's opinion does not warrant deference. In general, more weight is given to a treating physician's opinion supported by medically acceptable clinical and laboratory tests consistent with other substantial evidence in the record, and the ALJ must provide "good reasons" for the weight given a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); *Clark v. Commissioner of Soc. Sec.* 143 F.3d 115, 118 (2d Cir. 1998). When medical opinions in the record are inconsistent, or internally inconsistent, the ALJ will determine whether a disability determination can be made based on all of the available evidence. 20 C.F.R. § 404.1527(c)(2).

In this case, the ALJ determined Dr. Clerk's medical opinions were internally inconsistent and, therefore, did not warrant deference under the treating physician's rule. (R. 21). Substantial evidence in the record supports this conclusion. Specifically, Dr. Clerk examined Plaintiff intermittently over a three year period, yet failed to prescribe a regimented treatment plan, and, more importantly did not treat Plaintiff for the period between July, 2005 and October, 2007.  In addition, when requested to complete a medical assessment on February 27, 2007, Dr. Clerk replied he "could not give any opinion" to Plaintiff's condition because he had not seen the Plaintiff since March 21, 2005, and had "no idea about her condition." (R. 234). A medical examination for employment assessment in April, 2007, stated Plaintiff was moderately limited in her ability to sit and very limited in her ability to walk, stand, lift, carry, and climb, but the statement was illegible and granted no weight by the ALJ. (R. 20, 241-42). Contrary to substantial evidence in the record, Dr. Clerk opined on March 25, 2005, and August 12, 2008, that Plaintiff was disabled. (R. 227, 317). Not only were Dr. Clerk's opinions inconsistent with other substantial evidence regarding Plaintiff's

limitations, Dr. Clerk contradicted his own opinions on March 25, 2005, and August 12, 2008, that Plaintiff was totally disabled when he stated on November 12, 2007, that Plaintiff's cane was "not medically necessary." (R. 264).

Further, the Plaintiff testified she takes Tylenol for knee pain (R. 323), has difficulty walking long distances "like through the mall with the family," and has to sit when she experiences pain in her legs. (R. 321). This, without more, however, does not rise to the definition of ineffective ambulation under 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.00(B)(2)(b)(2). That Plaintiff uses only over-the-counter pain medication to alleviate her pain supports the ALJ's conclusion Plaintiff is not disabled if supported by other substantial evidence in the record. *Burgess v. Astrue*, 537 F3d. 177, 129 (2d. Cir. 2008). Plaintiff testified she was able to climb stairs with the use of a railing, and walk a block at a reasonable pace. (R. 334-35).

The record thus contains substantial evidence Plaintiff was able to walk without the use of a walker, two crutches or canes, walk a block at a reasonable pace on uneven or rough surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single handrail, and carry out routine ambulatory activities such as shopping and banking, such that Plaintiff ambulates effectively as defined by 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.00(B)(2)(b)(2), thereby establishing that Plaintiff does not meet the criteria for disability based on Plaintiff's musculoskeletal disorder under the Listing of Impairments 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.02(A)(B), specifically, major dysfunctions of joints due to any cause.

The ALJ's assertion that Plaintiff's complaints regarding the "intensity, persistence and limiting effects" of Plaintiff's symptoms were "not entirely credible" is

also supported by the record. (R. 19). 20 C.F.R. § 416.929(a). Specifically, the record supports the ALJ's conclusion that Plaintiff's complaints are not entirely credible including Plaintiff's testimony she experiences poor balance all of the time, falls only once in a great while, but walks through the mall with her family and performs household chores like vacuuming and preparing meals. (R. 321-35). *See Stanton v. Astrue,* WL 1076121 CA 2 NY 2010 * 2 (substantial evidence supports the ALJ's decision that the claimant was not credible where, *inter alia*, the ALJ relies on the record evidence).

The court therefore finds that the ALJ properly found Plaintiff not disabled under 20 C.F.R. Pt. 404 Subt. P, Appendix 1, § 1.02(A)(B), major dysfunctions of joints resulting from any cause, and the ALJ's conclusion that Plaintiff's complaints were not entirely credible is supported by substantial evidence. However, because the decision is before this court for a report and recommendation, the court proceeds to the next step of the inquiry.

**F.      Suitable Alternative Employment in the National Economy**

The ALJ concluded Plaintiff was unable to perform her past relevant work as a packaging machine tender, truck driver, and short order cook. (R. 21). The ALJ then determined whether Plaintiff would be qualified or suitable for any position within the national economy. The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity." *DeLeon,* 734 F.2d at 937. Once an ALJ finds a plaintiff's impairments prevent a return to previous work, the burden shifts to the Commissioner to prove substantial gainful work exists and that the plaintiff is able to perform in light of her physical capabilities, age, education, experience, and

training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints.  *Gold v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972).  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[10]  *Decker*, 647 F.2d at 294.  In addition, the Commissioner must prove that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[11]  *Id.*

---

[10]  "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §404.1567(a).

[11]  The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".  *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be

at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.

In this case, the ALJ properly determined job transferability was not an issue because Plaintiff did not have any past relevant work. (R. 21). Plaintiff does not contest this finding. The ALJ further determined Plaintiff had the residual functional capacity to perform "light" work. *Id*. Plaintiff contests this matter.

The Second Circuit has directed that where a disability benefits claimant cannot perform the full range of sedentary work, a strict, mechanical application of the Act's medical vocational grids is improper; rather, the plaintiff must be evaluated on an individual basis, and that such evaluation "can be met *only* by calling a vocational expert to testify as to the plaintiff's ability to perform some particular job." *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) (italics added) (reversing district court's decision upholding denial of plaintiff's claim for disability benefits and remanding for further evaluation of plaintiff on an individual basis, including testimony by a vocational expert, given that the medical-vocational grids do not apply to claimants who are unable to perform the full range of sedentary work). Furthermore, following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence. *Id*.

At the hearing, the VE testified, and reviewed Plaintiff's credentials and limitations, concluding that substantial gainful employment opportunities exist that an individual of the same age and education as Plaintiff, who was capable of, at most, light exertion, was capable of performing. (R. 328). The ALJ posed a hypothetical with

---

moved quickly to do repetitive tasks."
20 C.F.R. §404.1568(b).

additional limitations including the ability to sit up to eight hours in an eight-hour day, the ability to walk two hours in an eight-hour day, and a required sit/stand option. (R. 337). The ALJ's hypothetical included the non-exertional limitations of no climbing, occasional stair climbing, no kneeling, crawling, or squatting and occasional balancing. *Id*. The VE identified jobs Plaintiff was able to perform to include bench assembler, light, unskilled, with total job titles of 445,000 positions nationally and 800 in the Western New York region; packager, light, unskilled, with total job titles of 100,000 nationally, and 450 positions in the Western New York region, account clerk, sedentary, unskilled, with 19,000 positions nationally and 70 positions in the Western New York area, and order clerk, sedentary, unskilled, with total job titles of 27,000 positions nationally, and 80 positions in the Western New York area. (R. 327-28). All of the positions the VE identified allowed for alternating standing and sitting at will. (R.339). As such, the ALJ's decision that suitable work existed in the national economy which Plaintiff could perform is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Defendant's motion should be GRANTED; Plaintiff's motion should be DENIED. The Clerk of the Court is directed to close the file. SO ORDERED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 4, 2010
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     May 4, 2010
           Buffalo, New York